The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The parties have shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties as
 STIPULATIONS
1. The parties are subject to the North Carolina Workers Compensation Act.
2. The employee-employer relationship existed between plaintiff and defendant-employer on the date in question.
3. Managed Health Resources is the administrator of workers compensation insurance for the self-insured defendant-employer.
4. Plaintiff sustained an injury by accident by way of a specific traumatic incident to her back, which arose out of her employment with defendant-employer on or about 2 May 1997.
5. Plaintiffs average weekly wage was $304.40. Plaintiffs compensation rate is $202.94.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. On 2 May 1997, plaintiff was employed by defendant-employer as a cafeteria worker when she slipped and fell, injuring her back.
2. Defendant accepted the claim as compensable pursuant to a Form 21 agreement and paid temporary total disability benefits from 3 May 1997 through 11 June 1997.
3. Defendant referred plaintiff to Dr. Robert Giedraitis, a physiatrist at Miller Orthopedic Clinic, for treatment of low back pain and radicular numbness in her left leg. Dr. Giedraitis obtained a CT scan, which indicated a compression lesion and small herniated disk at L5-S1 compressing the S1 nerve root. The CT scan also indicated chronic degenerative changes at L4-L5.
4. Based on the opinion of Dr. Giedraitis, plaintiffs low back and left leg pain and numbness were causally related to the 2 May 1997 fall at work.
5. On 11 June 1997, Dr. Giedraitis recommended an epidural steroid injection at L5-S1, which she had on 25 June 1997. Dr. Giedraitis released plaintiff to return to work on 11 June 1997 with restrictions of no lifting over twenty-five pounds, no prolonged bending, stooping, excessive pushing or pulling.
6. Plaintiff was scheduled to return to light duty employment with defendant-employer on 12 June 1997. The job required plaintiff to sort medical records, which came in two to five inch stacks. The maximum lifting required was ten pounds. Plaintiff had the discretion to sit or stand as needed. Plaintiff reported to work on 12 June 1997 and received orientation for approximately thirty to forty-five minutes, after which she actually performed the job for fifteen to twenty minutes. At that time plaintiff was in too much pain to continue working. Therefore, plaintiff reported her pain to Elaine Dunlap, the medical records department supervisor, and explained that she needed to go home. Ms. Dunlap authorized plaintiff to go home, but told her to contact her doctor and Eleanor Thompson, defendants workers compensation adjuster. Meanwhile, Ms. Thompson filed a Form 28T indicating plaintiff was returning to work on a trial basis and plaintiffs benefits were terminated even though plaintiff had actually worked less than an hour and was incapable of working due to her pain.
7. Plaintiff called defendant on 16 June and 17 June 1997 indicating that she would not be able to work those days. In fact plaintiff called several times on 16 June 1997 indicating she was in severe pain. When plaintiff did not report to work thereafter or call defendant to indicate she would not be at work, she was terminated for failure to call or report to work for two days. After her termination, plaintiff received unemployment benefits in September and October 1997.
8. Plaintiff was unable to return to Dr. Giedraitis until 17 July 1997, at which time she requested that he release her without restrictions so that it would be easier for her to obtain employment. At this time her epidural injection had improved her pain. Dr. Giedraitiss impression was that plaintiffs lumbar radicular pain had resolved and he released her with no restrictions. He opined that she had no residual permanent impairment.
9. On 24 July 1997, plaintiff called Dr. Giedraitis office reporting that she had pulled something in her back. She was given a prescription, but could not get an appointment for another month.
10. Because plaintiff was unable to see Dr. Giedraitis, she saw her family physician, on 11 August 1997, without authorization from defendant or from the Commission. Dr. Martin Scobey, who is board certified in internal medicine and gastroenterology, saw plaintiff who complained of low back pain and tingling in the left hip and leg. Dr. Scobey prescribed an anti-inflammatory and muscle relaxant and referred her back to Dr. Giedraitis. Dr. Scobey testified in his deposition that he was unable to give an opinion regarding the cause of plaintiffs August 1997 back pain.
11. Plaintiff returned to Dr. Giedraitis on 25 August 1997 reporting that she had pulled something in her back and was having occasional numbness in her left leg. She denied any new weakness or back pain. He advised plaintiff that it might take nine to twelve months for the numbness to remit. He recommended no new treatment, but advised plaintiff to call if she had any new weakness, bowel or bladder problems or increasing levels of pain. Plaintiff never returned to Dr. Giedraitis.
12. However, on 24 September 1997, plaintiff returned to Dr. Scobeys office for low back pain and indicated that her medication was not helping. She saw a physicians assistant and reported a worsening of her low back pain. Plaintiff was given a new medication and told to call if the pain worsened.
13. On 29 September 1997, plaintiff was involved in a motor vehicle accident. Plaintiff began treating with Dr. Dean OHare, a chiropractor, with complaints of headaches, neck pain and low back pain. Plaintiff reported to Dr. OHare that she had previously sustained a low back injury, but that she suffered an increase in low back pain after the motor vehicle accident. Dr. OHare rendered chiropractic treatment until 30 October 1997, at which time he released her with no neck pain or headaches, but significant low back pain. Dr. Hare was of the opinion that the auto accident did not cause her low back pain. Dr. OHare then referred plaintiff to another unauthorized physician, Dr. William A. Primos. Dr. Primos then referred plaintiff to Dr. Raymond Sweet.
14. Without authorization or knowledge of defendant or the Commission, plaintiff presented at Dr. Sweets office on 31 October 1997, at which time she completed a Patient Information Sheet. Plaintiff initially checked that her injury was a workers compensation injury. However, she then whited out this response and checked that it was not a workers compensation injury. When Dr. Sweet first examined plaintiff on 4 November 1997, plaintiff was complaining of left leg pain which she reported having since June of 1997, which was related to her workers compensation injury. Dr. Sweet examined her and the reports of the CT scans and recommended back surgery. As testified by Dr. Sweet, this was not emergency surgery, and plaintiff took more than a week to decide to proceed. At this point, someone from Dr. Sweets office called Eleanor Thompson, defendants workers compensation adjuster, to ask for authorization to perform the surgery. Defendant was unaware that plaintiff had received any medical treatment since her last visit with Dr. Giedratis and denied authorization.
16. Although authorization had been denied by defendant, and without requesting authorization from the Commission, plaintiff proceeded with the surgery. On 18 November 1997, Dr. Sweet performed a microdiscectomy at the L5-S1 level on the left and a decompression at L4-L5.
17. The surgery was successful and Dr. Sweet released plaintiff on 27 January 1998. On 26 February 1998, Dr. Sweet rated plaintiff with eight percent permanent partial disability to her back.
18. Plaintiff reached maximum medical improvement regarding her back condition on 27 January 1998. She sustained an eight percent permanent partial impairment to her back.
19. When Dr. Giedraitis last saw plaintiff in August 1997, she was still having intermittent numbness in her left leg, which was causally related to her 2 May 1997 fall at work. As testified by Dr. Sweet, plaintiffs herniated disk was causally related to the May 1997 fall at work, but was exacerbated by the September 1997 motor vehicle accident. There is no evidence that the motor vehicle accident was attributable to plaintiffs own intentional conduct or that the motor vehicle accident was an independent, intervening cause of plaintiffs condition necessitating surgery. Thus, plaintiffs continuing symptoms of low back and left leg pain are causally related to plaintiffs herniated disk and the 2 May 1997 admittedly compensable injury by accident.
20. After plaintiff was released by Dr. Sweet in January 1998, she had numerous incidents of falling and in one incident, she was in a fight, which temporarily exacerbated her back pain. Plaintiff had healed when these incidents occurred. These incidents are not causally related to her compensable injury by accident.
21. As a result of the compensable injury by accident, plaintiff was unable to earn wages with defendant or in any employment from 2 May 1997 and continuing. Although plaintiff was released to perform light duty on 11 June 1997 her return for one hour on 12 June 1997 does not constitute a refusal of suitable employment as defendant has not carried the burden of proving that the job was suitable and because plaintiffs pain prevented her from performing the light duty job. Moreover, her termination for "no show no call is a pretext for termination, which has been disfavored by the Commission. Defendant failed to prove that any other employee would have been fired for the same behavior.
22. Although plaintiff never requested approval of defendant or the Industrial Commission to seek medical treatment from Dr. Scobey, Dr. OHare or Dr. Primos, the treatment rendered by these doctors was related to her admittedly compensable injury and was necessary to effect a cure, provide relief or lessen the period of her disability. In addition, plaintiff, or someone on her behalf, requested authorization to treat with Dr. Sweet immediately before the surgery. Again this treatment by Dr. Sweet was related to her admittedly compensable injury and was necessary to effect a cure, provide relief or lessen the period of her disability. Plaintiffs seeking additional treatment was reasonable in light of the fact that she was unable to see Dr. Giedraitis a couple of times and the fact that he released her when she evidently was in need of additional medical treatment.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 2 May 1997, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C.G.S. 97-2(6).
2. Plaintiffs continued back pain and left leg pain caused by the herniated disk, which necessitated surgery, were causally related to the 2 May 1997 injury. Horn v. Universal Leaf tobaccoProcessors, 119 N.C. App. 682 (1995), cert. denied, 342 N.C. 192.
3. Defendant has failed to carry its burden of proof that plaintiff is no longer disabled. Plaintiffs one hour of work on 12 June 1997 was insufficient to establish her wage earning capacity and defendants termination of plaintiff was insufficient to show an unjustified refusal of suitable employment. N.C.G.S. 97-32;Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228,472 S.E.2d 397 (1996); Franklin v. Broyhill Furniture Industry,123 N.C. App. 200, 472 S.E.2d 382 (1996).
4. As a result of the 2 May 1997 injury by accident which was admitted as compensable on a Form 21 Agreement, plaintiff is totally disabled from 2 May 1997 and continuing, and she is therefore, subject to defendants credit for unemployment benefits received, entitled to compensation at the rate of $202.94 per week beginning 2 May 1997 and continuing until she returns to work at the same or greater wages or further order of the Commission. N.C.G.S. 97-29.
5. Defendant is entitled to a credit for unemployment benefits received by plaintiff in an amount to be determined by the parties as there is insufficient evidence of record regarding the actual amount of benefits received. N.C.G.S. 97-42.1.
6. As a result of the 2 May 1997 injury by accident, plaintiff sustained an eight percent permanent partial disability to her back. N.C.G.S. 97-31(23).
7. Subject to the limitations of N.C.G.S. 97-25.1, plaintiff is entitled to reasonably necessary medical compensation including vocational rehabilitation necessitated by the 2 May 1997 injury by accident which tends to effect a cure, provide relief or lessen the period of disability. This includes medical compensation for her treatment by Dr. Scobey, Dr. OHare, Dr. Primos or Dr. Sweet. N.C.G.S. 97-25.1 and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission rejects the holding of the Deputy Commissioner and enters the following
 AWARD
1. Defendant shall pay total disability compensation to plaintiff, minus a credit for unemployment benefits earned, at the weekly rate of $202.94 from 2 May 1997 and continuing until she returns to work at the same or greater wages or further order of the Commission. The compensation, which has accrued, shall be paid in a lump sum to plaintiff, subject to the attorney fee approved hereinafter. The remainder shall be paid weekly to plaintiff, subject to the attorney fee approved hereinafter. If the parties are unable to agree on the amount of the credit for unemployment benefits, either parties may file a hearing request to resolve the dispute.
2. Defendant shall pay all reasonably necessary medical compensation including vocational rehabilitation necessitated by the 2 May 1997 injury by accident, which tends to effect a cure, provide relief or lessen the period of disability. This includes medical compensation for her treatment by Dr. Scobey, Dr. OHare, Dr. Primos or Dr. Sweet.
3. An attorney fee in the amount of twenty-five percent is approved for plaintiffs attorney, said amount to be deducted from the lump sum amount due to plaintiff and by every fourth check under this Opinion and Award and paid directly to said attorney by defendant.
4. Defendant shall pay the costs of this proceeding. Although defendant had made a motion for plaintiff to pay the costs of the depositions by Dr. Scobey and Dr. OHare, these depositions were necessary for evidence regarding causation regardless of the fact that prior to taking these depositions, defense counsel agreed to stipulate Dr. Scobeys and Dr. OHares medical records into evidence. Therefore, defendants motion is Denied. It is therefore ordered that defendant shall pay an expert witness fee in the amount of $250.00 to Dr. Scobey and an expert witness fee to be approved by the Commission to Dr. OHare upon submission of his bill.
This the ___ day of August 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER